ANDREW MACFARLANE, LUTHER H. TUCKER, GEORGE R. COOLEY, CHARLES L. MACARTHUR, SAMUEL J. SCRANTON, WILLIAM J. KATTREM AND THOMAS KERLEY,

*vs.*

NORTH AMERICAN CEMENT CORPORATION, a corporation of the State of Delaware, WILLIAM M. CLARK, FREDERICK W. KELLY, LORING A. COVER, WILLIAM H. BAKER, JOHN J. PORTER, ROBERT C. PRUYN, NICHOLAS F. BRADY, JANSEN NOYES, L. M. PHIFER and CHARLES WARNER.

*New Castle, June 7, 1928.*

*Robert H. Richards*, for complainants.

*Caleb S. Layton*, of the firm of Marvel, Layton & Morford, for defendant corporation.

THE CHIEF JUSTICE. In this cause the complainants, preferred stockholders of North American Cement Corporation, one of the defendants, and constituting a preferred stockholders' protective committee, with which committee 4,764 shares of such preferred stock have been deposited, have filed their bill of complaint seeking to enjoin the North American Cement Corporation from consolidating or merging with the Pennsylvania-Dixie Cement Corporation in accordance with the terms of an agreement of consolidation dated March 26, 1928, a copy of which is attached to and forms a part of the bill of complaint.

The said North American Cement Corporation and the said Pennsylvania-Dixie Cement Corporation are both Delaware corporations and are seeking to consolidate under the provisions of *Section 59, et seq.*, of the *General Corporation Law* of this State (*Revised Code* 1915, § 1973 *et seq.* as amended by *Acts Gen. Assem. March* 2, 1927 [35 *Del. Laws, c.* 85]).

Upon presentation of the bill of complaint together with a motion for a restraining order, a rule was issued to show cause why a preliminary injunction should not issue to prevent the said North American Cement Corporation from executing and filing the proposed agreement of consolidation with the said Pennsylvania-Dixie Cement Corporation, and an order was made restraining the said North American Cement Corporation from so executing and filing said agreement pending said rule, or until the further order of the Chancellor.

The cause is now before the Chief Justice, sitting as Chancellor, on the said rule to show cause why a preliminary injunction should not issue, the Chancellor having certified his disqualification to hear the cause.

The ground on which the complainants contend that the proposed consolidation should be prevented by the injunctive power of the Chancellor is that the terms of the proposed consolidation and/or merger are so grossly unfair and inequitable to the preferred stockholders of the said North American Cement

Corporation as to be a fraud upon them and as to entitle them to equitable relief.

At the time the bill was filed and when the restraining order was issued the meeting of the stockholders of the North American Cement Corporation to vote upon the proposed agreement of consolidation had not been held. The said meeting has since been held and a large majority of both preferred and common stockholders have voted in favor of the agreement of consolidation and, so far as the North American Cement Corporation is concerned, nothing more needs to be done by it to perfect the consolidation except to execute the agreement and take such steps as are necessary to authorize it to be filed in the office of the Secretary of State of the State of Delaware, and recorded, etc.

The complainants have filed their sworn bill of complaint and have also filed numerous affidavits in support of their motion for preliminary injunction. The North American Cement Corporation, one of the defendants, has filed its sworn answer and has also filed numerous affidavits in opposition to the motion for preliminary injunction.

The complainants have also filed affidavits in rebuttal of the affidavits of the corporate defendant.

From the sworn answer of the corporate defendant it appears that the answering defendant denies the charges of the complainants to the effect that the plan of consolidation is unfair and inequitable as to the preferred stockholders of the North American Cement Corporation.

The complainants state in their brief:

"It would seem to be clear from the case made out by the pleadings and evidence that two questions will be discussed, viz.:

"(1) Whether the complainants have a plain, adequate and complete remedy at law and therefore are entitled to no relief in equity.

"(2) Whether, on the evidence submitted, the plan for the consolidation of the two corporations in question is so grossly unfair and inequitable to the preferred stockholders of the North American Cement Corporation as to entitle them to an injunction of the Court of Chancery to prevent the consolidation on the terms contemplated.

"The first of these questions is purely a question of law and the second is as obviously a question of fact."

While the first question thus stated was discussed at some length by the solicitor for the complainants, it is not necessary for the court to consider it because the defendant corporation does not contend that the complainants have an adequate remedy at law, and specifically say:

"We do not contend that *Section* 61 of the *General Corporation Law*, being the *Section* providing for valuation of shares of stock of dissenting stockholders, deprives a court of equity of power to determine the fairness of the proposed plan of merger."

The attention of the court will, therefore, be directed to the second question stated by the complainants' solicitor and above quoted. It is a question of fact.

It may be noted first that no objection is made by the complainants to the merger itself, or to the aggregate amount of common stock, viz: 182,500 shares of the new corporation, which is allocated to the North American Cement Corporation's stockholders, both preferred and common, under the merger plan. Complainants object only to the basis of the exchange of the preferred stock and common stock of North American Cement Corporation for common stock in the consolidated corporation. They contend that the giving of one-half a share of the common stock of the new company for each share of the common stock of North American Cement Corporation is grossly unfair and fraudulent with respect to the preferred stockholders of North American Cement Corporation; they contend that the common stockholders should receive not more than one-sixth of a share of new stock of the new corporation. The complainants concede that the common stockholders must get something. They say:

"It is recognized and realized that the common stockholders must get something in a consolidation. Regardless of their voting power which, in this particular case, gives them control, the very fact of a consolidation of itself contemplates something being given in exchange for all of the stock of each of the constituent companies going into the consolidation."

The complainants do not contend that the preferred shareholders have a right to demand their preferential rights in a

merger proceeding, but they say the fact that they are such stock-holders should be considered in determining whether the stock re-classification is a fair and equitable one.

The complainants insist that in the merger plan the assets of the North American Cement Corporation have been written down, and this is based upon the book value per share of the common stock of the new company, multiplied by the number of shares of the common stock of the new corporation to be received by the North American Cement Corporation, viz: 182,500 shares; that is to say, by multiplying 182,500 shares by $23.82, the asset value of each share of the common stock of the new corporation, there would be given an aggregate sum of $4,347,150, which deducted from the book values of the present preferred and common stock of the North American Cement Corporation shows a write-down in the net assets of North American Cement Corporation of $4,030,021. The contention is that the stockholders of North American Cement Corporation are receiving by the merger stock having a book value of $4,347,150 for existing stocks representing an asset value of $8,377,171. But this contention brings into question only the adequacy of the aggregate number of shares allocated to the North American Cement Corporation, which is conceded to be fair.

The defendants say, that the respective holdings of the pre-ferred and common stockholders of the North American Cement Corporation "represent their mutual interests in assets which concededly have a value of $8,377,171, or $3,227,171 more than the par value of the preferred stock. This latter sum belongs to the common stockholders who, therefore, have a most substantial interest in the assets which are devolving upon the consolidated company."

But it is grossly unfair, say the complainants, that the common stockholders of North American Cement Corporation should get one-third of the total number of shares of common stock in the consolidated company. If the proposed merger is effected the preferred stock of the North American Cement Cor-poration will be converted into common stock of the consolidated corporation on the basis of two shares of such common stock for each share of the preferred stock of North American Cement

Corporation. And the outstanding common stock of North American Cement Corporation will be converted into common stock of the consolidated corporation on the basis of one-half a share of such common stock for each share of the outstanding common stock of North American Cement Corporation.

It is contended, therefore, by the complainants that the proposed plan of consolidation is unfair to the preferred stockholders of North American Cement Corporation because the basis of exchange of preferred and common stock of North American Cement Corporation for common stock in the consolidated corporation gives an inequitable and unfair advantage to the holders of common stock of North American Cement Corporation at the expense of the holders of preferred stock of North American Cement Corporation and, in effect, takes away from the preferred stockholders of North American Cement Corporation upwards of $1,500,000 in asset value and gives the same to the common stockholders of North American Cement Corporation.

It would be exceedingly laborious and not very profitable to review all the testimony in the case, which consists of affidavits, many of which are long and technical. They are made up in large measure of the opinions of persons respecting the prospective business and earnings of each of the merging companies, as well as the consolidated company. They are largely speculative and uncertain. But it is a reasonable conclusion, I think, from the evidence that the North American Cement Corporation, which is paying no dividends on either class of stock, is not likely to pay any unless its business improves very materially, and this does not seem very likely in the near future. It is also reasonable to conclude from the evidence that the Penn-Dixie Company, which is paying dividends at the rate of two dollars a year may continue to do so. It is the opinion of some of the affiants that the consolidated company would be able to pay dividends equal at least to those now paid by the Penn-Dixie Company.

Without attempting to state all the facts, and review at length the arguments of counsel, contained in their briefs, I think the facts and contentions have been sufficiently stated to present the real issues in the case. To do more would unduly

prolong the opinion, and in my view of the case it is not necessary to make a more detailed statement.

In the consideration of a case of this kind the first thing that impresses the court is the fact that corporation mergers are provided for by the laws of the state, and to that extent are encouraged and favored. Manifestly it was the thought of the Legislature that the formation of a new, consolidated company by the merger of two or more existing companies might be advantageous to the stockholders of such companies and sometimes necessary to conserve and promote their interests. When, therefore, the law provided that a merger might be effected if approved by the votes of stockholders of each corporation representing two-thirds of its total capital stock, it was no doubt believed that the interests of all the stockholders in the merging companies would be sufficiently safeguarded. Such being the case, it is manifest that the court should not, by its injunctive process, prevent a merger so approved unless it is clear that it would be so injurious and unfair to some minority complaining stockholders as to be shocking, and the court is convinced that it is so grossly unfair to such stockholders as to be fraudulent.

I think the statute, as well as the merger proposed thereunder, should be construed and considered broadly and not in a narrow or technical sense, having due regard to the objects intended to be accomplished. But a merger should not be permitted if its real and only purpose is to promote the interests of one class of stockholders to the detriment, or at the expense, of another class even though the latter may be in the decided minority.

But if the manifest purpose of the merger is to benefit each of the merging companies, and there is nothing to show that the companies would not be benefited, certainly the court should not interfere unless convinced that the merger was designed to injure minority stockholders of a certain class, or its effect would be so grossly unfair to them as to be shocking and fraudulent.

The question the court has to decide is this: Are the terms of the proposed consolidation or merger so grossly unfair and inequitable to the preferred stockholders of the North American

Cement Corporation as to be a fraud upon them and entitle them to equitable relief?

Preliminarily it may be said, that fraud on the part of those favoring and promoting the merger cannot be presumed, and there is nothing in the evidence that establishes it. In fact the evidence, so far as pertinent to this question, would seem to indicate the contrary, because it shows that the merger would probably be advantageous to both companies, and especially to the North American Cement Corporation, some of whose preferred stockholders are complainants. It is admitted by the complainants, as already said, that the aggregate number of shares allocated to the North American Cement Corporation in the consolidated company is adequate and fair. The objection is that the basis of exchange, the allotment or division of such shares between the preferred and common stockholders is grossly unfair to the former. The contention is hardly so broad as that because it is conceded that the allotment of stock in the new company to the preferred stockholders of the North American Cement Corporation who have considerable common stock may be fair, but to those who have but little common stock it is unfair. In this connection it is insisted by the complainants that the fact that almost one-half of the preferred stockholders of North American Cement Corporation voted in favor of the merger is of no evidentiary value in determining whether the proposed merger is fair to all the preferred stockholders because they were actuated by a selfish motive,—they had a large amount of common stock and would profit to a greater extent than preferred stockholders who had but little common stock. Conceding the vote of the preferred stockholders in favor of merger to be of little evidentiary value, as to good faith and honest purpose, it is nevertheless true that a very substantial part of such stockholders did so vote, and it cannot be assumed that the motive actuating such vote was entirely selfish. It is as reasonable to assume that such stockholders believed it would be for the best interest of the company in its present condition, and for the best interest of all its stockholders, in view of the advantages that might result from its consolidation with the Penn-Dixie Company whose present condition is better, and whose future prospects

are more promising than the North American Cement Corporation.

I come now to the question, whether the merger that has been approved by a very substantial part of the preferred stockholders of the North American Cement Corporation, and by more than two-thirds of its total capital stock, would constitute a fraud on the complaining stockholders and others acting with them, or be so grossly unfair to them as to amount to fraud and justify the court in preventing the merger.

It seems to me that much of the argument of counsel, and much of the evidence, which consists of affidavits, is unimportant in view of the admission of the complainants that the total shares in the consolidated company allocated to the North American Cement Corporation is adequate and fair. Because of this admission it is unnecessary for the court to decide whether the assets of the North American Cement Corporation were written down in the formation of the new company and for the purpose of the merger, or whether the value of its assets was much in excess of the total value of the stock it would receive in the consolidated company. The question is, whether the new stock would be so unfairly apportioned between the preferred and common holders of the North American Cement Company as to be a fraud on the preferred.

In the absence of any evidence of actual fraud, I think it may be assumed that the terms of the proposed merger are as advantageous to each of the merging companies as it was possible to secure, in view of the fact that the approval of stockholders representing at least two-thirds of the entire capital stock of each company was required to make the merger possible. Such being the case the court may be warranted in concluding that if the consolidation agreed upon is prevented there will be no consolidation at all.

There could be no merger without the vote of common stockholders in its favor, and that vote could probably not be secured unless the merger plan was made attractive to them. If satisfactory to them, and to preferred holders who had considerable common stock, the vote required could be obtained. So, when the necessity of securing the votes of common stockholders in favor of the merger is considered, as well as the pros-

pective value of the new stock according to the evidence, as well as the fact that the condition of every preferred stockholder of the North American Company would be better after merger than before, the conclusion must be that the merger plan indicates good business judgment in the interest of the company rather than such unfairness to any of its stockholders as amounts to fraud.

One way of looking at the case is this: Would it be better, or not, for the complaining stockholders if the proposed merger is consummated? It is my opinion, after carefully considering the affidavits filed in the case, that while the stock in the new company, allocated to the North American Cement Corporation may be inequitably and unfairly apportioned under the merger plan, between the preferred and common holders, it was probably the best that could be done for the company and its stockholders as a whole.

Would the merger be advantageous for the North American Cement Corporation? I think it is not questioned that it would be, and in view of the comparative conditions of the two merging companies, and their future prospects, it could not very well be denied. The North American Cement Corporation has not paid any dividends on its common stock, and is in arrear for about a year and a half in the payment of dividends on its preferred stock, the accumulation of unpaid dividends amounting to $5.25 per share. Because of the depressed condition of the cement business, particularly with this company, caused mainly by Belgian competition, and the location of the North American Cement Corporation's plants, the near future of its business seems very unpromising at least. There is nothing in the affidavits which convinces the court that its earnings will be any greater for sometime to come than they have been during the last eighteen months. It is apparent to the court that the North American Cement Corporation has everything to gain and nothing to lose by the merger. And it seems equally clear that the complaining stockholders will be in a more favorable financial condition after the merger than before even though the common stockholders derive more benefit therefrom than some of the preferred. Conceding that the stock in the new company allocated to the North

American Cement Corporation was unfairly apportioned as claimed, the common stockholders receiving too much and the preferred too little, I am nevertheless of the opinion that the unfairness was not so gross, or of such character as to warrant a court of equity in preventing the merger that has been legally approved, and which would be advantageous for the stockholders as a whole. It is reasonable to believe that the directors of North American Cement Corporation, and the stockholders who voted for the merger, honestly believed that the terms of the proposed merger were the best that could be obtained, and that the consolidation would be so beneficial to the company and all its stockholders that the consolidation should be affected even though the common, and some of the preferred holders would be benefited more than the preferred who held but little common stock.

They may have reached this conclusion in the exercise of their honest business judgment as to what was best for the company, after viewing the merger in its every aspect, as the court may also do. At any rate, the court is of the opinion that, if the proposed merger is unfair to the complainants as preferred stockholders, the unfairness is not of such character as to warrant the injunction prayed for. There is nothing in the evidence which shows that the merger agreed upon is fraudulent in purpose or effect. I am of the opinion that the court should not, by its injunctive power prevent the consolidation of two corporations which has been legally approved, except for very good cause; and that cause, I understand the complainants to agree, is unfairness to other stockholders so gross as to amount to fraud. I am not convinced there is proof of such unfairness in this case.

In the absence of any evidence of fraud, bad faith or intentional wrongdoing, there must be a presumption that those favoring the merger are acting honestly, according to their best judgment and for the advantage of the companies they seek to consolidate.

If the consolidation proposed is unfair to a stockholder but not so grossly unfair as to warrant injunctive relief, he is not without remedy. Under *Section* 61 of the *General Corporation*

*Law* (as amended by March 2, 1927, 35 *Del. Laws, c.* 85) any stockholder who objected to the merger may demand of the new company, and require it to pay to him, the fair value of his stock as of the date of the consolidation.

Let an order be entered denying the preliminary injunction and dissolving the restraining order heretofore issued.