**Harry Walter VOEGE and Anna May Tunmore, as Trustees under the Last Will and Testament of Harry W. Voege, Plaintiffs,**

v.

**R. G. SMITH et al., Defendants.**

**No. 71 Civ. 1042.**

United States District Court,
S. D. New York.

June 14, 1971.

On Reargument July 1, 1971.

Charles Trynin, New York City, for plaintiffs.

Simpson, Thacher & Bartlett, New York City, for defendant Schenley Industries, Inc.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant Glen Alden Corp.

## OPINION

LASKER, District Judge.

In this representative stockholders' action on behalf of Schenley Industries, Inc. ("Schenley") plaintiffs move for a preliminary injunction against the adoption of a plan and agreement of reorganization ("the Plan") the effect of which will be to merge Glen Alden Corporation ("Glen Alden") and Schenley. Plaintiffs are owners of 14% of Schenley's common stock and sue on behalf of a class of minority public holders of Schenley's common and its preferred convertible into common. Glen Alden is the owner of the remaining 86% of Schenley common stock. The Plan provides that each outstanding share of Schenley common, except shares owned by Glen Alden, which will be cancelled, will be converted into $5 in cash and $30 principal amount of a new 7½% Glen Alden subordinated sinking fund debenture due 1985. Plaintiffs contend that the value of this "pack-

age" is $26.60 per share. Defendants value it at $29.00 per share.[1]

The proxy statement accompanying the notice of annual meeting of stockholders of Schenley announces that Glen Alden has the necessary voting power to cause the reorganization to be consummated and that it intends to vote in favor of the reorganization.

Plaintiffs predicate jurisdiction on an alleged violation of Section 10(b) of the Securities Exchange Act of 1934 ("the Act"). A pendent claim under state common law is added. Since the facts supporting the pendent claim occurred chronologically earlier than the facts supporting the federal claim, their content and relationship can be better understood by describing the state cause of action first.

## I.

### A. *The pendent third party beneficiary claim:*

By agreement dated March 20, 1968, Glen Alden acquired 1,417,689 shares of Schenley common stock from Lewis N. Rosensteil, chief operating officer of Schenley, and six other related sellers. The purchase price was $53.33⅓ per share. The transaction was at arm's length. The agreement of March 20, 1968 provided that it was "the intention of the parties" that the holders of Schenley common would be afforded an opportunity to sell their shares for a total consideration comparable to or more favorable than the purchase price paid to the Rosensteil group.[2] Plaintiffs claim that, by virtue of the stock purchase agreement of March 1968, they became third party beneficiaries of Glen Alden's contractual obligation and are now entitled to $54 per share rather than the $26.60 per share which is their valuation of the

"package" they would receive under the Plan.

By prospectus of August 8, 1968 (clearly designed to carry out the "intention" clause of the March agreement), Glen Alden offered to purchase the stock of the holders of Schenley common at a formula which produced approximately $53.10 per share. Plaintiffs and the class they represent declined to tender their stock; that is, they refused the offer made by Glen Alden in August 1968. They claim, nevertheless, that, by virtue of the March 1968 agreement, they have a continuing "vested right" as third party beneficiaries of the March 1968 agreement to receive $53 to $54 at the present time.

As a subordinate argument, plaintiffs contend that Glen Alden is estopped from contending that a lesser price per share is fair because, in connection with the August 1968 tender offer, stockholders of Glen Alden sought to enjoin the offer on the ground that it was a waste of Glen Alden's assets, and Glen Alden asserted in that litigation that the price of $53.33⅓ per common share was fair and reasonable. This argument may be disposed of summarily since, while Glen Alden might be estopped on a showing that the present factual situation is substantially identical to that which existed in 1968, no such showing has been made (other than a conclusory allegation in the complaint), and it is highly doubtful that such a showing can be made.

### B. *The 10(b)–10b–5 Claim:*

The Glen Alden prospectus of August 8, 1968 contained the following paragraph:

"After completion of the Exchange Offer, Glen Alden may (subject to future conditions) make a further tender offer to the remaining holders of Schen-

1. Affidavit of John H. G. Pell, sworn to March 24, 1971, page 2, and Affidavit of Stanley S. Shuman sworn to June 7, 1971, page 5, respectively. Each outstanding share of $1.40 preferred stock will be converted into $4.50 cash and $27

principal amount of debentures. Defendants value the preferred package at $26.10 per share. (See Shuman affidavit, p. 5. The Pell affidavit does not appear to include a valuation of the preferred package.

2. Complaint, par. 10.

ley Common Stock or propose to combine Glen Alden and Schenley. In connection with any such further tender offer or combination, the consideration to be received by the holders of Schenley Common Stock who have not accepted the Exchange Offer may be more than, less than, or the same as that provided in the Exchange Offer."

It is claimed that the prospectus falls awry of the requirements of Section 10 (b), since neither in this passage or elsewhere did the prospectus "disclose what future conditions would prompt or justify a lesser consideration than that provided in the said Exchange Offer, in view of Glen Alden's obligations under the Rosensteil Stock Purchase Agreement, and in view of the vested third party beneficiary interest therein of plaintiffs and the other members of the class."[3] It is further argued that the instant Plan, which would result in the conversion of plaintiffs' common stock for a package of cash and debentures valued by them at $26.60 per share, is "unfair to the minority, is designed to injure the minority, and its effect is so grossly unfair to the minority as to be shocking and fraudulent." (Complaint, par. 25).

Finally, in the conclusory language which often characterizes 10b–5 complaints in this court, it is alleged that the Plan "constitutes, and the use by Glen Alden of its majority stockholdings in Schenley and its control and domination of Schenley's Board of Directors to effectuate the same, would constitute an act, practice, and course of business which operates or would operate as a fraud and deceit upon the minority public common stockholders of Schenley, including the plaintiffs, as a class, in connection with the forced sale of their Schenley shares under the proposed merger, in violation of the prohibitions of Section 10 of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated by the Securities and Exchange Commission thereunder."

Claiming that they have no rights of appraisal (under Delaware law, which controls as to that issue), plaintiffs argue that they will be irrevocably damaged by the consummation of the Plan, which will require them to accept cash and securities valued by them at $26.60 for each share of common stock when, according to their view, they have a right to receive $54 for each share.

For the reasons set forth below the motion for a preliminary injunction is denied.

## II.

A preliminary injunction is "an extraordinary remedy, and will not be granted except upon a clear showing of probable success *and* possible irreparable injury." (Emphasis in original). Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir. 1969).

See also: Clairol, Inc. v. Gillette Co., 389 F.2d 264, 265 (2d Cir. 1968); Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840 (2d Cir. 1967); Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966); Societe Comptoir De L'Indus. Contonniere Etablissements Boussac v. Alexander's Department Stores, Inc., 299 F.2d 33, 35 (2d Cir. 1962).

Furthermore,

"A preliminary injunction will not issue where there are sharply contested issues of fact." Newman v. Holobeam, Inc., 319 F.Supp. 1389, 1390, n. 2 (S.D.N.Y.1970), and cases cited therein.

By all these tests the plaintiffs' application fails. Plaintiffs have not established the probability of succeeding on the merits or the irreparability of damage in the absence of an injunction, and there are sharply contested issues of fact in the case.

A. *The Probability of Success:*

(1) *Jurisdiction:* At the outset a real issue exists as to whether the court has jurisdiction of the subject matter. It is highly questionable whether the allegations of the complaint describe fraudu-

---

3. Complaint, par. 14(b).

lent or deceptive conduct within the meaning of Rule 10b–5 or Section 10(b) of the Act. While the language of the complaint uses such words as "shocking and fraudulent" (par. 25) or parrots the language of the statute by claiming (par. 27) that the Plan "constitutes, and the use by Glen Alden of its majority stock-holdings * * * to effectuate the same, would constitute an act, practice, and course of business which operates or would operate as a fraud and deceit upon the minority public common stock-holders of Schenley," it nowhere alleges facts upon which such conclusions can be based. Absent are any facts showing a failure to disclose, or misrepresentation by commission or omission. Yet this is what the federal statute (§ 10(b) of the Act) is all about. As Judge Mansfield recently observed, in denying an application for a preliminary injunction under the same statute and rule:

"Rule 10b–5 is basically a disclosure provision; if plaintiff claims that regardless of disclosure and shareholder approval the directors * * * are to be held liable for a breach of fiduciary duty * * *, his remedy lies under state rather than federal law." Abramson v. Nytronics, Inc., 312 F.Supp. 519, 526 (S.D.N.Y.1970).

The true analysis of plaintiffs' complaint here is not that a fraud has been perpetrated, or that there has been a misrepresentation or failure to disclose—indeed, the facts all seem to be on the table—but rather, as stated at page 3 of plaintiffs' memorandum:

"Rule 10b–5 is being violated by requiring the holders of Schenley common, who have no right of appraisal under § 262(k) of the Delaware General Corporation Law, to receive upon the proposed merger for their Schenley common stock, which is presently worth not less than $54 per share, a consideration in cash and debentures which have a presently realizable value of $27.50."

But such a complaint does not seem to state a cause of action under Section 10 (b). We are presented with an issue strikingly similar to that before the Court of Appeals of this Circuit in Rosenblatt v. Northwest Airlines, Inc., 435 F.2d 1121 (2d Cir. 1970). There, as here, the minority stockholders sought a preliminary injunction against a merger proposed by an 86% stockholder. Plaintiffs claimed that the proxy statement relating to the merger was deficient. In affirming the District Court's denial of an injunction, the Court of Appeals held that the requirements of the Act were complied with—regardless of the fairness of the transaction to the minority—when the minority had been fully informed of the facts. The opinion stated:

"[O]nce the Northwest stockholders had been sufficiently alerted to SBC's active interest in promoting the merger and the charges that had been made against it in the stockholders' suits, it was for each of them to determine, on the basis of his own view of the future of the merged company and his knowledge of the cost of his own stock, whether he preferred to go along with the merger or assert his appraisal rights." (435 F.2d at 1127).

In the case at hand the plaintiffs have been informed of all the facts relating to the transaction and have, by the proxy material issued in connection with the merger, been "sufficiently alerted" to Glen Alden's "active interest in promoting the merger" as well as the details of this very lawsuit and a number of similar pending actions.

We need not, and do not, reach any final determination as to whether federal jurisdiction here exists. However, the preceding analysis raises sufficient question in itself to cast doubt on the probability of plaintiffs' prevailing in this court; and, as the following discussion indicates, other serious questions are also inherent in the case.

(2) *Fairness*: Even if we assume that federal jurisdiction is properly invoked, plaintiffs do not demonstrate the probability that they will succeed on the merits. Their theory that they are en-

titled to $53 to $54 per share as a third party beneficiary is of doubtful validity, since the Rosensteil-Glen Alden agreement of March 1968 merely stated that it was the intention of those parties that the holders of Schenley common would be afforded *an* opportunity to sell their shares at a comparable or more favorable price than the $53.33⅓ paid Rosensteil (emphasis added). Such an opportunity was tendered the plaintiffs in August 1968, and they rejected it. Furthermore, the very offer of August 1968 advised all holders of Schenley common (including plaintiffs) that if any further offer were made it might be at a price "more than, *less than,* or the same as that provided" on that occasion ($53.10). (Emphasis added.)

The issue, then, is reduced to a determination of whether, independent of past history, the terms of the Plan are fair to the plaintiffs and their class. Even as to this narrow issue, the plaintiffs have not established, to the degree necessary to sustain the granting of a preliminary injunction, the probability that they will succeed. Plaintiffs themselves agree that the package offered them is worth at least $26.60. Defendants value it at $29.00. Even if we accept plaintiffs' valuation, there is no showing of clear unfairness, since the record indicates that from the beginning of 1971 to the announcement of the reorganization on February 24, the average closing price of Glen Alden was 28⅜, and the range has been from 25 to 31⅜. The stock did not trade over 28 during all of 1970, or in the latter months of 1969, and traded as low as 19¼ in 1970 and 20¾ in 1969.[4] The prices paid to Rosensteil and offered to holders of Schenley common in August of 1968 are, if not irrelevant, clearly not controlling as to fairness, since they were obviously premium prices paid for control and, in any event, without going into the details presented by the record, there have been substantial changes in the business affairs of Schenley since those days, including the sale,

under an antitrust decree, of one of Schenley's most profitable subsidiaries.

There is no need to analyze microscopically the affidavits of the valuation experts on each side, but it may be stated that the presentation of defendants' expert is considerably more thorough and persuasive than that of plaintiffs'. It is sufficient to observe that, for the reasons outlined above, plaintiffs have not demonstrated that they will probably succeed in showing that the offer is unfair.

B. *Irreparability of Damage:*

Plaintiffs' argument that they will be irreparably damaged if the Plan is consummated is based on the false assumption that they have no right of appraisal under Delaware law. They offer no authority to sustain this contention, and it appears to be at direct variance with the language of 8 Del.C. Section 262(k) of the Delaware General Corporation Law, which provides that appraisal rights are available to stockholders when, as here, " * * * under the terms of a merger or consolidation * * * such holders are required to accept for such stock anything except stock or stock and cash in lieu of fractional shares of the corporation surviving, or resulting from such merger or consolidation." Here the stockholders are "required to accept" debentures of the merged corporation— that is, something other than stock or cash.

But even if plaintiffs did not have appraisal rights, they would nevertheless not be irreparably damaged by consummation of the Plan, since it is obvious that their right to litigate the issue remains and no showing has been offered—much less made—that they cannot be fully protected by recovering from defendants whatever damages they may be entitled to.

C. *Sharpness of Factual Issues:*

Furthermore, an injunction should not be granted where issues of fact are "sharply contested," (Newman v. Holobeam, Inc., supra, 319 F.Supp. at 1390, n.

4. Affidavit of Stanley S. Shuman, p. 10.

2). Here the issues of value, fairness and the facts relating to the tender offer of August 1968 are indeed keenly contested. While this consideration is certainly not controlling, it is relevant, and when added to those expressed above concludes the matter.

The motion for a preliminary injunction is denied.

It is so ordered.

### On Motion for Reargument

The motion for reargument is denied.

Plaintiffs assert that the court has overlooked the facts included in the moving affidavit and the letter of plaintiffs' attorney of June 9, 1971, establishing that in the Sanders-Riklis litigation Glen Alden had valued the Schenley stock at $54 per share. These facts were not overlooked and were indeed discussed in the following paragraph of the original opinion:

> "As a subordinate argument, plaintiffs contend that Glen Alden is estopped from contending that a lesser price per share is fair because, in connection with the August 1968 tender offer, stockholders of Glen Alden sought to enjoin the offer on the ground that it was a waste of Glen Alden's assets, and Glen Alden asserted in that litigation that the price of $53.33⅓ per common share was fair and reasonable. This argument may be disposed of summarily since, while Glen Alden might be estopped on a showing that the present factual situation is substantially identical to that which existed in 1968, no such showing has been made (other than a conclusory allegation in the complaint), and it is highly doubtful that such a showing can be made."

On the motion for reargument the plaintiffs contend that the present factual situation is substantially identical to that which existed in 1968 or 1969. But I do not find that the record supports such an assertion. The remarks of Meshulam Riklis, Chairman of the Board of Glen Alden, excerpted from page 34 of Forbes Magazine of March 15, 1971, submitted by plaintiffs on this motion (to the effect that he regarded Schenley as a money-making machine), hardly rise to the dignity of evidence necessary to the delicate comparison of present and past values in changed circumstances.

Even if the contentions presently made by plaintiffs were accepted, the disposition of the matter would not be altered.

In my earlier opinion I stressed that, even if it were assumed that the jurisdictional allegation of misrepresentation had been adequately stated, plaintiffs had not demonstrated the probability of success on the merits nor had they established irreparability of damage. These views are substantially strengthened by the decision, handed down June 15, 1971 (the day after my opinion) by Vice Chancellor Marvel in David J. Greene & Co., et al. v. Schenley Industries, Inc., Civil Action No. 3542, in the Court of Chancery of the State of Delaware in and for New Castle County, denying, in a companion case, a motion to enjoin the Schenley-Glen Alden merger. Finding that the plaintiffs there, as I have found to be the case here, had rights of appraisal, the Vice Chancellor remarked:

> "* * * plaintiffs have not shown that they will be irreparably damaged if an injunction does not issue in that their relief clearly lies in an appraisal proceeding.

> "While a court of equity should stand ready to prevent corporate fraud and the overreaching by fiduciaries of the rights of stockholders, Bennett v. Breuil [Petroleum Corporation], 34 Del.Ch. 6, 99 A.2d [236] 336, by the same token this Court should not impede the consummation of an orderly merger under the Delaware statutes, an efficient and fair method having been furnished, which permits a judicially protected withdrawal from the merger by a disgruntled stockholder, MacFarlane v. North American Cement Corporation, 16 Del.Ch. 172, 157 A. 396."

It is to be observed that between the filing and return day of this motion to reargue the Schenley-Glen Alden merger has been consummated. While this significant fact may not bar plaintiffs as a matter of law from pressing their prayer for relief, it is now impossible for the court to enjoin the merger even were that justified, which it is not.

The motion for reargument is denied.

It is so ordered.