**SAXON INDUSTRIES, INC., a corporation of the State of Delaware, Defendant Below, Appellant,**

v.

**NKFW PARTNERS, a partnership, individually and on behalf of the Committee of Equity Security Holders of Saxon Industries, Inc., Plaintiff Below, Appellee.**

Supreme Court of Delaware.
Submitted: Sept. 28, 1984.
Decided: Sept. 28, 1984.
Issued: Feb. 15, 1985.

Stephen E. Herrmann, Richards, Layton & Finger, Wilmington, David R. Hyde (argued) Cahill, Gordon & Reindel, and Alan B. Hyman, Burns, Summit, Rovins & Feldesman, New York City, for appellant.

John H. Benge, Jr. (argued) Allmond, Eastburn & Benge, Wilmington, and Stephen J. Blauner, Milbank, Tweed, Hadley & McCloy, New York City, for appellee.

Before McNEILLY, HORSEY and MOORE, JJ.

MOORE, Justice:

In this appeal we address a matter of first impression—the interaction of the Bankruptcy Code with the General Corporation Law of the State of Delaware. Saxon Industries, Inc. (Saxon) appeals an order of the Court of Chancery directing it to hold an annual stockholders' meeting to elect directors notwithstanding Saxon's pending reorganization under Chapter 11 of the Bankruptcy Code. The plaintiff, NKFW Partners (NKFW), owns stock in Saxon and sued pursuant to 8 *Del.C.* § 211 to compel an annual meeting which had not been held for over 31 months. Following trial, the Vice Chancellor ruled that the alleged adverse effect of a stockholders' meeting upon a proposed reorganization did not overcome the plaintiff's right to compel the election of directors. We agree and affirm.[1]

## I.

Saxon is a publicly held Delaware corporation in the paper distribution and converting business. Since April 1982, it has operated as debtor-in-possession in a voluntary Chapter 11 reorganization, now pending in the Southern District of New York. During those proceedings, the court ordered the appointment of a Committee of Equity Security Holders of Saxon Industries, Inc. (the Equity Committee).[2]

Saxon's last shareholders' meeting was on June 21, 1981. After filing for Chapter 11 reorganization in April 1982, new management, experienced in restoring financially troubled companies, was retained. Although no stockholders' meetings were held, the Saxon Board eventually elected five new directors.[3]

Two of these directors were proposed by the Equity Committee pursuant to an agreement which settled litigation previously brought to compel a shareholders' meeting.[4]

Under new management Saxon sold several unprofitable operations, and for the first six months of the 1984 fiscal year it showed operating profits in excess of $4 million with annual sales of approximately $400 million. Despite such progress, Saxon's shareholders' deficit is approximately $200 million.

However, several companies expressed an interest in acquiring Saxon. This was the most realistic means by which Saxon could obtain cash and/or securities to fund its reorganization plan. A committee of the Board was appointed to consider the acquisition offers. This group, assisted by Saxon's investment bankers, recommended the proposal by Alco Standard Corporation (Alco), a diversified, publicly-held company. Under this arrangement Saxon would become a wholly-owned subsidiary of Alco, and Saxon's unsecured creditors would re-

---

1. This appeal was heard on an expedited basis in light of Saxon's pending reorganization. We announced our decision to affirm in an order with the notation that this opinion would follow at a later date.

2. The Equity Committee consists of the seven largest stockholders willing to serve on the committee, and is charged with the responsibility of representing Saxon's shareholders in the Chapter 11 reorganization. 11 U.S.C. § 1103.

3. Under Delaware law, vacancies on a board occurring between stockholder meetings *may* be filled by a majority of the remaining directors. Thus, 8 *Del.C.* § 223(a)(1) provides:
   (a) Unless otherwise provided in the certificate of incorporation or by-laws:

(1) vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all of the stockholders having the right to vote as a single class may be filled by a majority of the directors then in office, although less than a quorum, or by a sole remaining director;

4. The previous suit was filed by the Equity Committee in October, 1982. The agreement settling that matter permitted the Committee to propose two nominees to fill vacancies on Saxon's Board, and provided that no further action seeking a stockholders' meeting would be instituted prior to July 1, 1983.

ceive over $116 million in cash and $21.5 million in newly issued Series B preferred stock. Alco also agreed to issue Series B preferred stock to the equity holders. This was communicated by a letter of intent dated February 3, 1984.

Evidently, the plaintiff was dissatisfied with the strength, or lack thereof, shown by the present board in pursuing a reorganization deemed to adequately protect the stockholders' interests. On February 7, 1984, with the approval of the Equity Committee and the New York bankruptcy court, NKFW filed this action in the Court of Chancery on its own behalf, and in its representative capacity for the Equity Committee, to compel an election of directors. By then over 31 months had elapsed since Saxon's last annual meeting.

On March 6, 1984, Saxon filed applications to remove the Chancery action to the United States Bankruptcy Court for the District of Delaware, and then to transfer the matter to the Southern District of New York. After a hearing the bankruptcy judge in Delaware ruled on April 24, 1984, that the Delaware Court of Chancery had a nationally recognized expertise in the resolution of corporate matters which were expeditiously decided on a regular basis. The issues here clearly were within Chancery's expertise, and the matter was remanded to the state court.

Trial was held before a Vice Chancellor on June 12, 1984, followed by post trial briefing. However, on July 12, Saxon filed its Plan of Reorganization in the New York bankruptcy court. Thereafter, the Court of Chancery issued a letter opinion, dated August 8, and its final order on August 17, directing that a stockholder's meeting be held. Saxon immediately appealed, and the matter was briefed and argued on an expedited basis. We heard argument on September 28, 1984. That afternoon we announced our decision and issued an order affirming the trial court. Concurrently, we advised counsel that this written opinion, more fully setting forth our views, would follow.

## II.

### A.

Initially, Saxon contends that the bankruptcy court is a more appropriate forum for these shareholders to air their grievances. Saxon argues that the plaintiff's only purpose for requesting the meeting is to achieve for the stockholders a more substantial payment in the reorganization. Saxon notes that it currently has a $200,000,000 shareholder deficit, and suggests that the stockholders could lose what they will very generously receive from the Alco proposal. Saxon further reasons that federal bankruptcy law provides for a hearing and a determination by the bankruptcy court on the overall fairness of the reorganization to all affected parties. 11 U.S.C. § 1128. Furthermore, all shareholders will vote on the proposed plan. 11 U.S.C. § 1126.

Finally, Saxon contends that allowing the shareholders' grievances to be aired in the bankruptcy forum, as opposed to a stockholders' meeting, is more suitable because the bankruptcy court will consider and weigh the competing demands and relative equities of all the interested parties.

### B.

■ Significantly, Saxon's preference for the bankruptcy court ignores the fact that a proceeding there does not address the same issues of corporate governance as does an action under section 211 of Delaware's General Corporation Law. Thus, absent other compelling legal or equitable factors, insolvency alone, irrespective of degree, does not divest the stockholders of a Delaware corporation of their right to exercise the powers of corporate democracy.

■ Under 8 *Del.C.* § 211, the Court of Chancery may summarily order a meeting:

If the annual meeting for election of directors is not held on the date designated therefor, the directors shall cause the meeting to be held as soon thereafter as

convenient. If there be a failure to hold the annual meeting for a period of 30 days after the date designated therefor, or if no date has been designated, for a period of 13 months after the organization of the corporation or after its last annual meeting, the Court of Chancery may summarily order a meeting to be held upon the application of any stockholder or director ... The Court of Chancery may issue such orders as may be appropriate ...

8 *Del.C.* § 211. Thus, a stockholder makes out a prima facie case under section 211 when it is shown 1) that he is a stockholder of the corporation, 2) that a meeting was not held within 30 days of its designated date, or 3) that a stockholders' meeting to elect directors has not been held for over thirteen months. Clearly, NKFW has established the first and third criteria.

According to section 211, "the Court of Chancery may summarily order a meeting to be held". Although that provision does not mandate such a result, this Court has recognized that a stockholder's right to have a meeting convened to elect directors is "virtually absolute". *Coaxial Communications, Inc. v. CNA Financial Corp.*, Del.Supr., 367 A.2d 994 (1976); *Prickett v. American Steel and Pump Corporation*, Del.Ch., 251 A.2d 576 (1969).

■ Nonetheless, a stockholder's prima facie case can be defeated by an adequate affirmative defense. Saxon points to several cases where an annual meeting was not ordered while a corporation was undergoing reorganization in bankruptcy. However, those authorities are distinguishable. The decision of *In Re Potter Instrument Co.*, 593 F.2d 470, 474 (2d Cir.1979), denied a shareholders' petition for a meeting based on findings that the plaintiff was partially responsible for the corporation's collapse, and that he was "frustrated in his efforts to smash the companies which he brought into existence because he [was] ousted from management and control".

■ Unlike the situation in *Potter*, there is no evidence that NKFW is trying to

"smash" Saxon. Presumably, the shareholders are dissatisfied and hope to increase the payment they will receive in the reorganization. While Saxon challenges plaintiff's motives, the difficulty with this argument is that Delaware law does not presume that shareholders act contrary to their own best interests. In any event, the shareholders have a clear right to seek the relief afforded by section 211, and they have received the approval of two bankruptcy courts to pursue it. Under such circumstances, motive, whatever its inspiration, is immaterial. *Unit, Inc. v. Kentucky Fried Chicken Corp.*, Del.Super., 304 A.2d 320, 331, 332 (1973); *Millstein v. Arcade Cafeteria*, Del.Ch., 2 A.2d 158 (1938); *Gans v. Delaware Terminal Corp.*, Del. Ch., 2 A.2d 154, 156 (1938).

The other case principally relied on by Saxon is *In Re Alrac Corporation*, No. B–74–3299 (Bankr.D.Conn., filed October 22, 1975), and it too can be factually distinguished. In *Alrac* a court ordered annual meeting was sought after the Chapter 11 plan of arrangement had been confirmed and the appeal from that order of confirmation had been argued and was under consideration. By the terms of the arrangement a number of shares of the debtor's common stock were to be issued to creditors. As a result, if confirmation of the plan was affirmed on appeal, the creditors would be given majority control. Thus the court concluded that "in a real sense, the creditors are equitable stockholders, and they would be prejudiced if a meeting of stockholders was held at which they were not privileged to vote". *Id.* Accordingly, the shareholders were enjoined from seeking to enforce their right to an annual meeting until the appeal confirming the arrangement was decided. Here, no plan of reorganization had yet been approved by the bankruptcy court. Thus, we are not called upon to decide issues of the type presented in *Potter* and *Alrac*.

### C.

Saxon alternatively argues that it has met its burden of proving an affirmative

defense by the testimony presented at trial regarding the potential adverse effects that could result from a stockholders' meeting.

The company's main concern, apparently, is that Alco will "walk away" from its proposal if there is a proxy fight.[5] At trial, Saxon introduced an SEC Schedule 13–D, filed on May 8, 1984, by another stockholder, David Bolger, as evidence of the likelihood of a proxy contest.[6] Since the trial court's decision in this matter, Mr. Bolger has made a written demand for a stockholders' list "to communicate with other shareholders of Saxon Industries, Inc. (1) in connection with Saxon's meeting of shareholders". The defendant contends that this clearly suggests the possibility of a proxy fight.

At trial Saxon's president testified that in his business judgment a proxy contest could produce several adverse consequences. Such possibilities included the sheer expense of a proxy fight, loss of the Alco offer, loss of valued sales employees due to the uncertainty of Saxon's future, and curtailment of Saxon's trade credit. However, on cross examination the president had to concede that each of his concerns was born of supposition. No proxy contest had yet materialized, Alco had not threatened to "walk away", no employees had threatened to resign, and no trade creditor had threatened to terminate its relationship with the company.

■ Nonetheless, Saxon argues that the mere possibility of these dangers is a sufficient defense to plaintiff's claims. Furthermore, Saxon contends that the trial court held it to an impossible standard of proof by requiring the defendant to show, for example, that NKFW was attempting to "smash" the company. However, since

motive has no relevance here, the Vice Chancellor correctly noted that once a prima facie case under 8 *Del.C.* § 211 has been made, no Delaware decision has declined to convene a stockholders' meeting, or refused to require a meeting to be held as scheduled. For example, in *Coaxial Communications, Inc. v. CNA Financial Corp.*, Del.Supr., 367 A.2d 994 (1976), this Court affirmed Chancery's order convening an annual meeting, even though an action brought by the defendant corporation against the plaintiff shareholder (also a corporation) was pending in another jurisdiction. We held that "[g]iven the importance of an annual meeting of stockholders in the administration of corporate affairs, 'prompt' relief is essential under § 211". *Id.* at 998. *See also, Savin Business Machines Corp. v. Rapifax Corp.*, Del.Ch., 375 A.2d 469 (1977); *Tweedy, Browne & Knapp v. Cambridge Fund, Inc.*, Del.Ch., 318 A.2d 635 (1974).

### D.

■ NKFW has made out a prima facie case under section 211. Since Saxon remained in control of its affairs, insolvency did not divest the stockholders of their right to elect directors. Normal corporate governance therefore continues. *See In Re J.P. Linahan, Inc.*, 111 F.2d 590, 592 (2d Cir.1940).

Certainly an appropriate balance must be struck between the Bankruptcy Code and our General Corporation Law. But given the strong Delaware policy behind the free exercise of a stockholder's right to elect directors, and the absence of that focus in the pending bankruptcy proceedings, the scales necessarily tip in favor of the for-

---

**5.** According to the Stock Acquisition Agreement dated September 14, 1984, Alco may "walk away" from the agreement if the Plan of Reorganization is not confirmed by the bankruptcy court by January 15, 1985 and consummated by February 15, 1985.

**6.** The Schedule 13–D states that Bolger, his wife, a revocable trust he created and a partnership of which Bolger is the sole general partner, own

5.6% of Saxon's outstanding common stock and that they "may consider [among other things] ... the solicitation of proxies to replace members of the current Board of Directors of [Saxon]...."

It is noted that Mr. Bolger is not connected with the plaintiff, NKFW Partners, nor is he a member of the Equity Committee.

mer. Moreover, we must conclude that the alleged harm portrayed by Saxon on this record is too ethereal to constitute an adequate affirmative defense to a section 211 action. Thus, the findings and conclusions of the Court of Chancery were clearly correct, and the same are AFFIRMED.