**Hilary PRIDGEN, et al., Plaintiffs,**

v.

**John ANDRESEN, et al., Defendants.**

**No. 3:94CV00851 (DJS).**

United States District Court,
D. Connecticut.

June 30, 1995.

David B. Zabel, Alexander H. Schwartz, Cohen & Wolf, P.C., Bridgeport, CT, Yvette Harmon, Ross & Hardies, New York City, for Hilary Pridgen, John Van Raalte and Microbyx Corp.

Robert A. Izard, Jr., Robinson & Cole, Hartford, CT, John F.X. Peloso, Jr., Eric

W.G. Dawson, Robinson & Cole, Stamford, CT, James R. Hawkins, II, Finn, Dixon & Herling, Stamford, CT, for John Andresen and Constance Andresen.

John Andresen, Microbyx Corp., New Canaan, CT, pro se.

Constance Andresen, Microbyx Corp., New Canaan, CT, pro se.

## RULING ON PENDING MOTIONS

MARTINEZ, United States Magistrate Judge.

This securities law case is presently before the court on the plaintiffs' application for temporary restraining order, preliminary injunction and contempt citations (docket # 77) and on motion of the defendants John and Constance Andresen ("the Andresens") to modify the existing preliminary injunction (docket # 79). An evidentiary hearing was held on June 14, 1995. The issues have been fully briefed by both parties. For the following reasons, the plaintiffs' motion for injunctive relief and for contempt is denied. The defendants' motion to modify the existing preliminary injunction also is denied.[1]

### I. *Factual and Procedural Background*

In May 1994, the plaintiffs Hilary Pridgen, a director and officer of Microbyx Corporation, and John Van Raalte, a director of Microbyx, instituted this action under the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) and § 78aa, claiming that the Andresens, shareholders and officers of Microbyx, had violated numerous securities laws as well as their fiduciary duties. Prigden and Van Raalte sought a preliminary injunction to enjoin a May 31, 1994 special shareholder meeting of Microbyx which had been called to elect a new board of directors. The plaintiffs also sought to enjoin the Andresens from, *inter alia,* voting their own Microbyx stock and any other Microbyx stock under the Andresens' control, from controlling Microbyx directly or indirectly and from taking any steps to remove Pridgen and Van Raalte from their positions with Microbyx until further order of the court.

On June 8, 1994 Magistrate Judge Thomas P. Smith recommended that the injunction issue. On June 14, 1994 U.S. District Judge Alfred V. Covello accepted the magistrate judge's recommendation and granted the preliminary injunction. The facts found by the court after a two day hearing are fully set forth in Magistrate Judge Smith's opinion filed on June 8, 1994. Familiarity with those facts is assumed and they will not be repeated here in their entirety. For the purposes of this ruling the court finds the following salient facts.[2]

Microbyx is a public corporation incorporated under the laws of Delaware. It owns patents on a tampon device which collects menstrual blood to be used to test for cervical cancer and endometriosis. The value of the company's patents lies in the manufacture of a patented product, but Microbyx has never manufactured, sold or marketed any products. Microbyx has never earned a profit or issued a dividend to its shareholders. Its only source of funds is investors. Since 1990 Microbyx has raised at least $1,275,113 from private investors, including $75,000 raised in 1994. It has unsuccessfully proposed four underwritings in attempts to raise more than five million dollars.

John Andresen co-founded Microbyx in 1972 and is presently its chairman of the board and treasurer. He has sole authority to sign checks on behalf of Microbyx. Constance Andresen, John Andresen's wife, is Microbyx's secretary. Microbyx has approximately 300 shareholders who own 2,092,995 shares. The Andresens own or control approximately 477,417 shares giving them direct control of approximately 20% of Micro-

---

**1.** On June 14, 1995 the parties executed a consent to exercise of jurisdiction by a United States Magistrate Judge in accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. Accordingly, the undersigned Magistrate Judge has authority to conduct this and all further proceedings in the case including trial and entry of final judgment. The parties also agreed that any appeal will be taken directly to the United States Court of Appeals for the Second Circuit. *See* Docket # 95.

**2.** The facts set forth here include some of those found by Magistrate Judge Smith as well as facts found by the undersigned based on the evidence presented at the hearing on June 14, 1995.

byx's stock. On at least two occasions John Andresen claimed to indirectly control other shares giving him a 51% controlling interest in the company.

Microbyx has an "oral contract" with Sarles Associates, Inc. ("Sarles"), a management company controlled by John Andresen. It is unclear exactly what services Sarles provides to Microbyx under the contract; Pridgen and Van Raalte have repeatedly asked the Andresens for an explanation but never have received one. Magistrate Judge Smith found "a strong possibility that the Sarles/Microbyx relationship is little more than a subterfuge for self-dealing by John and Constance Andresen." Magis.Op. at 6. For what has been called only "management services," Microbyx paid Sarles approximately $1.2 million since 1984. Indeed, in the three months from January 1994 through March 1994, Microbyx paid Sarles approximately $638,000. Magistrate Judge Smith found that the Andresens "siphoned Microbyx's funds into Sarles and then used those funds to pay their personal expenses." *Id.* at 7.

The plaintiff Pridgen, whom the court found to be a highly credible witness, has been a shareholder of Microbyx since 1991. Since early 1994 she also has been its president, CEO and one of its three directors. In April 1994 Prigden requested $12,000 of corporate funds to retain a design engineer who could start to develop the patents into a marketable product. She was informed by John Andresen that the company had no funds. Prigden was perplexed by this lack of funds because she knew that between January 1, 1994 and late April 1994 her family had invested $75,000 in Microbyx and that a prospectus dated February 8, 1994 indicated a total of $320,000 had been invested in the prior eleven months. Despite her repeated requests for financial information, Prigden was never given an accounting of Microbyx's funds. Finally, she conducted her own independent investigation of Microbyx's financial records. She discovered that the Andresens had received $1,056,445 of Microbyx's funds from 1990 through early 1994 and that these funds constituted 80.1% of shareholder investments.

As soon as Prigden and Van Raalte, the third director of Microbyx, began making waves about the company's finances, Andresen began a campaign to remove them as directors. On May 13, 1994 the Andresens sent a letter to Microbyx's shareholders—although they excluded Pridgen—requesting a special shareholder meeting. Magistrate Judge Smith found this letter a solicitation of shareholder votes that contained numerous misrepresentations and omissions. After sending the letter, the Andresens caused a proxy statement to be sent to shareholders on May 18, 1994. The proxy stated that a special shareholder meeting was being called at the request of the stockholders to vote in new directors. Magistrate Judge Smith found that the proxy statement contained false and misleading statements and material omissions. He concluded that the plaintiffs would suffer irreparable harm if the special shareholders meeting was not enjoined, that the balance of hardships tipped decidedly in the plaintiffs' favor, that serious questions existed as to whether the plaintiffs were victims of a swindle at the hands of the Andresens and that the public interest would be served by the entry of the requested preliminary injunction.

Judge Covello approved and adopted Magistrate Judge Smith's recommended ruling and preliminary injunction. The injunction, *inter alia*, (1) restrained the Andresens and Microbyx from holding the special shareholder meeting called for May 31, 1994 and from calling or noticing any other special shareholders' meeting; (2) restrained the Andresens from voting their Microbyx stock or any stock under their control or direction; (3) restrained the Andresens from interfering with Pridgen's actions as president, CEO and director; (4) restrained the Andresens and Microbyx from recognizing any individual other than Pridgen as president, CEO and director; (5) restrained the Andresens from interfering with Van Raalte's actions as a director; (6) restrained the Andresens from writing any checks against or withdrawing funds from the accounts of Microbyx or Sarles; and (7) restrained the Andresens from entering into any contracts, making any payments in excess of $1,000 or in any way

legally obligating Microbyx without the consent of all parties to the action.

The defendants unsuccessfully appealed the preliminary injunction to the Second Circuit. The Second Circuit upheld the district court, observing that the record was replete with strong evidence of securities law violations and that the preliminary injunction was necessary to address all the potential transgressions alleged by the plaintiffs.

In the meantime, on September 26, 1994 Judge Covello granted a motion for preliminary injunction filed by the Andresens which sought "an order enjoining any action by the Board which in any way changes the status quo at Microbyx." *See* Docket # 69.

In April 1995, shortly after the Second Circuit affirmed the June 14, 1994 preliminary injunction, three shareholders of Microbyx who are close friends and longtime associates of the Andresens with whom John Andresen has been in close and repeated contact, commenced an action in the Delaware Court of Chancery. There they sought an order under the Delaware Business Code directing Microbyx to hold an annual shareholders' meeting. Microbyx did not appear in the Delaware action. On May 17, 1995 the Delaware court entered an order directing Microbyx to hold an annual meeting on July 17, 1995.

The evidence at the June 14, 1995 hearing—including the testimony of John Andresen which the court found to be evasive, self-serving and lacking in candor—supports the inference that John Andresen influenced or controlled the three "independent" shareholders who obtained the Delaware court order requiring the annual meeting to be held.

On May 17, 1995 John and Constance Andresen sent a letter to Microbyx shareholders to "update" them on Microbyx. The letter stated that Pridgen and Van Raalte had obtained an injunction blocking the May 1994 stockholder meeting and were attempting to take over the company. The letter did not disclose the terms of the injunction, did not disclose that the injunction was upheld by the Court of Appeals, did not disclose the court's findings that the Andresens had pro-

vided false and misleading information to shareholders in May 1994, did not disclose the court's finding of securities laws violations by the Andresens and did not disclose the court's finding that the Andresens had misused Microbyx's funds. The letter said that to stop Pridgen and Van Raalte three "independent" shareholders had gone to court in Delaware and sought an order directing the company to hold an annual shareholders' meeting and permitting the three independent shareholders to sponsor a slate of directors that did not include Pridgen and Van Raalte. The letter also stated that John Andresen and "the former president of Bristol Myers" had put together a business program to sell the product and that "with a new Slate [sic] of Directors in place, excluding Pridgen and Van Raalte, Mr. Andresen has a former CEO of a Billion Dollar Public Corporation [sic] available to become CEO, pending an agreement on the employment terms." The letter ended with a statement that the Andresens were available by telephone to address questions or concerns and that the shareholders had a right to a meeting "to protect their property and investment." The letter was not filed with the SEC.

After the letter was sent to Microbyx shareholders the plaintiffs filed the instant motion for preliminary injunction asking the court (1) to enjoin the defendants from proceeding with the annual shareholders' meeting on July 17, 1995; (2) to order Microbyx to comply with the terms of the preliminary injunction prohibiting the noticing or holding of a shareholders' meeting; and (3) to issue a contempt citation against the Andresens. The defendants oppose the motion. They argue that the preliminary injunction previously issued by this court only enjoined *special* shareholder meetings, not *annual* meetings and, further, that this court is precluded by the Anti–Injunction Act, 28 U.S.C. § 2283, from interfering with the order of the Delaware Court of Chancery. The Andresens have moved to modify the existing preliminary injunction to permit them to vote the shares of Microbyx stock which they own and control at the annual meeting scheduled for July 17, 1995.

## II. Discussion

### A. The Anti–Injunction Act

The federal Anti–Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This statute is "an absolute prohibition against enjoining state court proceedings unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). It is settled that blocking the enforcement of a state court order is tantamount to enjoining a state court proceeding within the meaning of the statute. *See id.* at 287, 90 S.Ct. at 1743.

The plaintiffs maintain that the Anti–Injunction Act does not apply in this case because the relief they seek falls within the "necessary in aid of jurisdiction" and "protection of judgments" exceptions. They assert that the requested injunction is necessary to prevent the Delaware state court from interfering with the court's consideration and disposition of this action and that holding a shareholders' meeting as ordered by the Delaware court prior to this court's disposition of the case will seriously impair this court's flexibility and authority to decide the case. The court is not persuaded by the plaintiffs' arguments.

The exceptions to the Anti–Injunction Act on which the plaintiffs rely "are narrow and are 'not [to] be enlarged by loose statutory construction,'" *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146, 108 S.Ct. 1684, 1689, 100 L.Ed.2d 127 (1988) (quoting *Atlantic Coast Line R. Co.*, 398 U.S. at 287, 90 S.Ct. at 1743). "Any doubt must be resolved against the finding of an exception to § 2283." *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 643, 97 S.Ct. 2881, 2893, 53 L.Ed.2d 1009 (1977). As the defendants correctly maintain, while the two exceptions on which the plaintiffs' rely "might literally seem to apply to the present situation", it is clear that neither exception does in fact apply. *See Bruce v. Martin*, 724 F.Supp. 124, 131 n. 11 (S.D.N.Y.1989).

The necessary in aid of jurisdiction exception only applies when a state court proceeding threatens to dispose of property which forms the basis for federal *in rem* jurisdiction. *Attick v. Valeria Assoc. L.P.*, 835 F.Supp. 103, 114–15 (S.D.N.Y.1992). The exception is based on the well settled rule of "right and necessity" that where an action is *in rem*, the first court to take possession of a res withdraws the property from the reach of the other and can proceed without interference from a court of another jurisdiction. This is so because both courts cannot possess or control the same thing at the same time. *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 134–36, 62 S.Ct. 139, 144–45, 86 L.Ed. 100 (1941).

This action is an *in personam* action, not an *in rem* action. There is no *res* forming the basis of this court's jurisdiction which might be disposed of pursuant to the Delaware court order which would then destroy this court's jurisdiction. The necessary in aid of jurisdiction exception does not allow a federal court to enjoin a state proceeding merely because it interferes with a protected federal right. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149–50, 108 S.Ct. 1684, 1691, 100 L.Ed.2d 127 (1988); *see generally*, Charles A. Wright et al., 17 *Federal Practice & Procedure* § 4225 (2d ed. 1988). Thus, the "necessary in aid of jurisdiction" exception to the anti-injunction act is of no avail to the plaintiffs.

The "protect or effectuate its judgments" exception to the Anti–Injunction Act also is inapplicable under the facts of this case. This exception applies only where the state action seeks to relitigate matters that were fully litigated by a federal court. *See* Charles A. Wright et al., 17 *Federal Practice & Procedure* § 4226 (2d ed. 1988). The exception is referred to as the "relitigation" exception and is founded in concepts of collateral estoppel and res judicata. *Chick Kam Choo*, 486 U.S. at 147, 108 S.Ct. at 1690. Under this exception a federal court may halt state litigation that might undermine the res judicata or collateral estoppel effects of a federal judgment. *Staffer v. Bouchard*

*Transp. Co.*, 878 F.2d 638 (2d Cir.1989) (citing *Chick Kam Choo*, 486 U.S. 140, 108 S.Ct. 1684). It is an essential prerequisite of this exception that the claims or issues which the federal injunction would insulate from litigation in state court be issues that actually have been decided by the federal court. *Id.* at 643.

■ The Delaware proceeding which the plaintiffs seek to enjoin is not an attempt to relitigate any claim that has already been litigated in this court. Rather, the Delaware action involves shareholders' right to call an annual meeting as expressly authorized by Delaware law. *See* 8 Del.C. § 211. *See also Saxon Indus., Inc. v. NKFW Partners*, 488 A.2d 1298, 1301 (Del.1984). Moreover, the Delaware action was brought by three shareholders who are not parties to this action and who do not seek to relitigate the issues raised in this action. None of the issues in the two actions are the same. Thus, the exception to the Anti–Injunction Act which "protect[s] or effectuate[s]" federal court judgments is not applicable in this case.

The injunction which the plaintiffs seek constitutes a stay of the proceedings of the Delaware Court of Chancery. Because neither of the exceptions to the Anti–Injunction Act on which the plaintiffs rely apply under the facts of this case, this court is prohibited by 28 U.S.C. § 2283 from enjoining the enforcement of the Delaware court order. Therefore, the plaintiffs' motion for preliminary injunction cannot be granted.

### B. *Contempt*

The plaintiffs also maintain that the Andresens should be "cited" for contempt for their actions which allegedly constitute a violation of the existing preliminary injunction. The plaintiffs do not indicate whether they are seeking a citation for civil or criminal contempt nor do they request a specific sanction. They have not briefed the issue of contempt.

■ The difference between civil and criminal contempt lies in the purpose for which the sanction is imposed. A sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party is civil. *New York State Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1989). A sanction imposed to punish for an offense against the public and to vindicate the authority of the court, rather than to provide private benefits or relief, is criminal. *Id.*

■ The purposes of a civil contempt sanction are remedial and coercive. When a penalty is imposed as a contempt sanction and the party can avoid the penalty by performing the act required by the court order, the contempt is civil. *Id.* A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order with which the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing and (3) the party has not diligently attempted in a reasonable manner to comply. *Id.* at 1351.

■ A contempt sanction imposed when a party fails to comply with a court order is criminal. Criminal contempt is a crime, a public wrong punishable by fine or imprisonment or both. *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 115 (2d Cir.1988). The proper test for a finding of criminal contempt is proof beyond a reasonable doubt. *Id.* at 116. Moreover, Federal Rule of Criminal Procedure 42(b) prescribes the procedures that must be followed in order to cite a defendant for contempt. *See Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir.1987).

■ While the court does not sanction or approve the Andresens' conduct in connection with the filing of the Delaware action or sending the May 17, 1995 letter to Microbyx shareholders, the court does not have a sufficient record before it to warrant a finding of contempt or to support a contempt sanction, either civil or criminal. Accordingly, the plaintiffs' motion for a contempt citation must be denied; it will be denied without prejudice.

### C. *Andresens' Motion to Modify Existing Injunction*

■ The Andresens argue that the existing injunction should be modified to permit them to vote their shares and the shares

under their control because circumstances have changed since the injunction entered. They maintain that the injunction was entered for two reasons: (1) because they had not filed Schedule 13D statements with the SEC disclosing that they owned more than 5% of Microbyx's stock and (2) because the court found that they had obtained proxies to vote at the special shareholders' meeting in violation of Section 14(a) of the 1934 act. They argue that because they have now filed the required schedules and do not plan to solicit any proxies for the upcoming annual meeting, the reasons for the injunction no longer exist.

The court does not agree with the Andresens' argumentative assumption that the injunction against voting was issued for only the two narrow reasons set forth above. Rather, it is abundantly clear from the prior orders of Magistrate Judge Smith and Judge Covello that both judicial officers were persuaded on the basis of the entire record before them that there was a substantial danger that the securities laws would be violated if the Andresens were allowed to call or hold a shareholder meeting, vote their stock, or exercise any control over the company.

The court does find that changed circumstances have made the injunction unnecessary. To the contrary, the court is convinced by all the evidence that is now part of the record that the Andresens intend to take whatever action they can to circumvent the injunction and regain control of Microbyx. This the court cannot and will not condone.

The defendants appear to justify their actions by arguing that they are complying with the letter of the injunction. They claim that the injunction only prevents the Andresens from *interfering* with Pridgen and Van Raalte in their positions with Microbyx and that taking steps to *remove* them does not violate the injunction. The argument is disingenuous and cavillous. It should be obvious to all that the Andresens are bound and expected to obey not only the letter but also the spirit of the injunction. *See SEC v. Okin*, 137 F.2d 862, 864 (2d Cir.1943).

In sum, the court does not find a change of circumstances justifying the requested modification of the injunction. To the contrary, the record as it has developed since the hearing before Magistrate Judge Smith adds additional factual support to the earlier findings of securities laws violations and misuse of Microbyx funds. There is no new or additional evidence that weakens or contradicts Magistrate Judge Smith's finding that Microbyx and the plaintiffs will be irreparably harmed if the Andresens are not enjoined. There is nothing in the record to support the Andresens' claim that they will suffer irreparable harm if the injunction is not modified to allow them to vote their stock at the annual meeting. Accordingly, because there are absolutely no new circumstances which warrant a modification of the existing injunction, the Andresens' motion to modify is denied.

### III. *Conclusion*

The plaintiffs' motion for preliminary injunction (docket # 77) is DENIED. The plaintiffs' motion for contempt (docket # 77) is DENIED without prejudice. The motion of the defendants, John and Constance Andresen, to modify the existing injunction (docket # 79) also is DENIED.